**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IVELISSE PEREZ-COLON,**

        **Plaintiff,**

**-vs-**                                                        **Case No. 6:13-cv-1169-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on July 29, 2010, alleging an onset of disability on April 30, 2009, due to disc surgery, pinched nerves, major depression, high blood pressure, anxiety, agoraphobia, lower back pain, and left leg numbness. R. 19, 785-86, 199-204. Her application was denied initially and upon reconsideration. R. 98-109, 114-19. Plaintiff

requested a hearing, which was held on September 17, 2013, before Administrative Law Judge Mary Montanus (hereinafter referred to as "ALJ"). R. 65-89. In a decision dated December 30, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 13-41. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on March 20, 2013; Plaintiff subsequently was granted additional time to file her appeal. R. 2-11. Plaintiff filed this action for judicial review on July 5, 2013. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on June 4, 1970, and she was forty-one years old on the date of the ALJ's decision. R. 33, 185, 199. She completed the 12th grade and has four or more years of college; however Plaintiff can read some things in English but cannot write in English (R. 69), and she answered "no" to whether she can speak and English on the SSA form. R. 203, 205. Plaintiff required an interpreter at the hearing. R. 67.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pinched nerves and left leg numbness, lower back pain post-surgery, major depression, high blood pressure, anxiety, and agoraphobia. R. 204. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the cervical and lumbar spine, spondylosis of the thoracic spine, obesity, and major depressive disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 21. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a wide range of sedentary work, involving standing/walking for two hours total in an eight-hour workday for only fifteen minutes at a time with the use of a cane for ambulation and sitting six hours total in an eight-hour workday for one hour at a time before needing to alternate to a standing position for five minutes while on task. R. 24. Plaintiff was also limited to

no climbing of ladders/ropes/scaffolds, work at heights or with dangerous moving machinery, exposure to excessive vibration, and no crawling and occasional climbing of stairs with a rail, stooping, crouching or kneeling, and overhead reaching; and, as to mental limitations, Plaintiff had moderate limitations in maintaining social functioning and concentration, persistence and pace, and therefore is limited to simple, routine tasks with only occasional change in the work setting and occasional direct contact with the general public. R. 24.

Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 33. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a final assembler of optical goods, a lens inserter, and a film hand mounter. R. 33, 83-87. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 34-35.

Plaintiff now asserts six points of error[1]. First, Plaintiff argues that the ALJ erred by finding she had the RFC to perform sedentary work even after her second car accident on May 19, 2010. Second, she claims the ALJ erred in failing to assign the appropriate weight to the opinions of Plaintiff's treating physicians and in failing to discuss the weight assigned to a third treating specialist's opinions. Third, Plaintiff contends the ALJ erred by focusing on one aspect of the evidence while disregarding other contrary evidence. Fourth, she asserts that the ALJ erred by failing to review the entire record when she asserted Plaintiff's daily activities contradicted the level of impairment she alleged at the hearing. Fifth, she argues that the ALJ erred in failing to consider the side effects of her medications and how they impacted her ability to perform the sedentary work

---

[1] Plaintiff delineated two of her argument sections as "D," which made it appear that there were five arguments total (A - E), but there are actually six. Doc. 24 at 25, 28.

referred to by the VE. Sixth, Plaintiff contends her collection of unemployment benefits is not a proper basis to deny disability benefits. All issues are addressed, although some are collectively addressed under the discussion of the ALJ's determination of Plaintiff's RFC. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED** for further consideration of some of the issues raised.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Plaintiff's RFC and the treating physician opinions

Plaintiff argues that the ALJ erred by finding she had the RFC to perform sedentary work even after her second car accident on May 19, 2010, especially in light of the opinions of Dr. Gerardo Rojas, Dr. Vivian Charneco (psychiatrist), and Dr. James Shea. Plaintiff contends the ALJ also erred by focusing on only one aspect of the evidence while disregarding other contrary evidence. The Commissioner contends that the ALJ's decision was based on substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Eleventh Circuit, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2)*; Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

1. *Physical limitations and the physicians' opinions*

Plaintiff argues the medical evidence in the Record shows a significant increase in her symptoms after May 19, 2010, the date of her second car accident[2], which would make her incapable of performing sedentary work. Plaintiff testified that her symptoms increased and her condition worsened after she was rear-ended in the second car accident, and she argues the ALJ acknowledged this in her decision when discussing the second car accident. The Commissioner contends that the ALJ's decision was based on substantial evidence.

---

[2] Plaintiff is amending her onset date to May 19, 2010, the date of her second car accident. Doc. 24 at 20.

The ALJ found that Plaintiff retained the ability to perform a limited range of light work during the period prior to the second car accident (May 2010), but concluded that after the May 2010 accident the Record supported an additional impairment. The ALJ found:

> There is reference to initial use of a walker, CT findings of right L4 nerve root impingement, and encroachment of left L5 nerve root, and early spondylosis of the thoracic and cervical spine (Exhibit 10F[Dr. Khan; R. 535-36-CT scan]). An independent medical examiner noted 4 herniated cervical discs and some degree of deficit in strength and sensation on examination (Exhibit 16F[Dr. Shea]), but these findings are not supported on imaging reports and the remainder of the record does not include evidence of a persistent neurological deficit. The February 2011 consultative examiner [Dr. Grant] noted moderately antalgic gait and the inability to squat or heel/toe walk, but negative SLR, and intact strength and sensation intact (Exhibit 17F). In August 2011, Dr. Kahn notes normal gait, and full strength and motion of the lower extremities (Exhibit 20F). The undersigned concludes that the record after the second accident supports additional standing, walking, lifting, carrying and postural limitations, but not that would preclude a range of sedentary work. The need for a cane is supported for this period, but the undersigned concludes that the need for use of a walker is not supported in the absence of a persistent deficit of strength or sensation. In reaching this conclusion, significant weight is given to the State agency physician's opinion that the claimant can do a range of light work with standing and walking limited to at least 2 hours in an 8-hour workday (Exhibit 18F[Dr. Krishnamurthy - R. 616-22). The undersigned has also considered the claimant's reported activities in December 2010, which included performing tasks of light housework, and cooking and washing clothes with assistance for a couple of hours 2 or 3 times a week, and shopping for food, clothing and medication with her husband, 1- 2 times a week for 3 or more hours. (Exhibit l7E). Furthermore, the claimant was collecting unemployment benefits in 2010 (Exhibit 2D), for which she indicated to the Employment Commission that she was able and ready to work, while alleging to the Social Security Administration that she is disabled as she is unable to work.

R. 30.

Plaintiff claims that the ALJ's reliance on the State Agency physician's report to render an unfavorable decision was not based upon substantial evidence. Plaintiff argues that the state agency physician only focused on the medical records of Plaintiff's internist, who is not an expert in the field of orthopedics, and the ALJ did not provide good cause for placing greater weight on the state agency physician's opinion than the opinions of her treating physicians, Doctors Charneco, Rojas, and Shea. Plaintiff also argues that although Dr. Broom diagnosed a possible recurrent L5-S1 disc herniation

on the MRI after the first car accident (but before the second car accident (R. 455)), the ALJ erred when she did not mention Dr. Broom's finding in her decision.

Plaintiff contends that even though she saw Dr. Rojas and Dr. Shea for treatment of her back problems, the ALJ erred in not giving their opinions more weight as "orthopedic specialists." Plaintiff argues that the ALJ also erred in focusing on the progress notes of the treating internist, Muhammad Khan, M.D., who is not a specialist in orthopedics, after the second car accident to discredit her mental condition and physical complaints.

First, as to Dr. Rojas, who saw Plaintiff before her second car accident, the Commissioner argues that the ALJ was not required to give greater weight to Dr. Rojas' April 2010 "opinion" because it was nothing more than a check-box form for the Application for Disabled Person Parking Permit, with Dr. Rojas certifying to the State of Florida Department of Highway Safety and Motor Vehicles that Plaintiff was disabled because she had a "[s]evere limitation in [her] ability to walk due to an arthritic, neurological, or orthopedic condition." R. 484.

Plaintiff initially injured her back on April 30, 2009, when she was emptying a bucket after mopping a kitchen area, and when she twisted in the process, she felt a sharp burning sensation in her back with subsequent extension of symptoms to the left lower extremity, buttock, posterior thigh and calf associated with paresthesias and weakness involving the left lower extremity. R. 404. As of April 2010, based on a December 2009 MRI, Plaintiff was diagnosed with mild bulging discs at four levels without spinal stenosis; some straightening of the cervical spine related to muscle spasm, and degenerative endplate changes; there was no evidence of focal disc protrusion or spinal stenosis. R. 461-62. Following the second car accident in May 2010, Plaintiff was treated by Dr. Kahn, and on the day following the car accident Plaintiff complained of neck pain, back pain, shoulder pain, left arm, left leg pain and head pain. R. 542.

Dr. Rojas saw Plaintiff after her first car accident in December 2009. At the final evaluation on April 29, 2010 (but before the second accident in May 2010), Dr. Rojas deemed Plaintiff to be at the point of maximum medical improvement and noted the prior treatment and diagnoses by Dr. Kornberg – who found minimal bulging and no acute pathology with postoperative changes – and Dr. Broom, who recommended continuing with conservative treatment and an exercise program (in March 2010). 460-61. Dr. Rojas assessed a permanent impairment of 6% (4% cervical, 2% lumbosacral) and opined that Plaintiff would have future expenses related to treatments such as physical therapy, medication, and doctor visits. R. 463. Dr. Rojas prescribed a walking cane on April 13, 2010. R. 483. Although Dr. Rojas completed an application for Plaintiff to obtain a Disabled Person Parking Permit, he did not specify the basis for his opinion (and the form did not ask for it). R. 484. Dr. Rojas did not recommend surgery, and his impression of Plaintiff's condition was mild back pain, mild bulging disc at four cervical levels without spinal stenosis, and two herniated discs in the lumbar spine and lumbar spine strain/sprain, uncontrolled, with a "[p]robable postsurgical change from left laminectomy at L5-S1 level to be clinically correlated; [s]oft tissue signal abutting disc space posterolaterally on the left at this level, which may be due to scarring versus small recurrent/residual disc protrusion (herniation)" and a "[s]mall right-sided posterolateral disc protrusion (herniation) at L4-L5 level with additional findings as noted above, causing some narrowing of right neural foramen at this level; [d]isc desiccation and degenerative endplate changes; and [m]ild lumbar levoscoliosis." R. 463.

The ALJ accurately summarized Dr. Rojas' treatment notes and his final April 2010 evaluation and opinion: "Dr. Rojas reported the claimant has achieved stability consistent with maximum medical improvement; and as a result of the accident the claimant has an estimated whole person permanent impairment rating of 6%." R. 28. The ALJ adequately discussed Dr. Rojas' treatment notes and finding. Moreover, his findings of Plaintiff's condition were superseded once she

was in the second car accident less than one month later on May 19, 2010. Plaintiff concedes as much by asserting the alleged onset date should be changed to the date of the second car accident. While the ALJ also noted that Dr. Rojas had completed an application for a disabled parking permit for Plaintiff, the ALJ did not construe it as treatment notes or an opinion on Plaintiff's limitations, and made no further comment. R. 28. The ALJ's failure to further discuss Dr. Rojas' "opinion" on the Parking Permit form was not error, particularly in light of the detailed, five-page final evaluation that was in the Record and discussed by the ALJ. As the Commissioner points out, Dr. Rojas identified no specific work-related limitations or restrictions in the final evaluation or the Parking Permit form. R. 484. It is worth noting that he recognized that Plaintiff had some disc herniations, albeit ones he described as "mild," after the first accident but before the second accident. R.463.

Second, Plaintiff also argues that the ALJ erred in not giving adequate weight to the opinion of another treating "orthopedist," Dr. Shea of Physical Medicine Pain Center, who examined Plaintiff in January 2011, eight months after her second car accident in May 2010; his report was prepared on April 4, 2011, about a month after the MRI's were done on March 2, 2011. The ALJ acknowledged that Dr. Shea had performed the independent medical exam and noted four herniated cervical discs and some degree of deficit in strength and sensation on examination (R. 30), but discounted their importance because "these findings are not supported on imaging reports and the remainder of the record does not include evidence of a persistent neurological deficit." R. 30.

Although Plaintiff characterizes Dr. Shea as an "orthopedist" he is actually a pain medicine specialist according to his letterhead for "Physical Medicine Pain Center, P.A. – Specializing in Physical Medicine and Rehabilitation, Pain Management, EMG, NCV." R. 610. As the Commissioner points out, Dr. Shea would not be considered an official treating source (although possibly a prospective one), but his status is more akin to a one-time examiner whose opinions would not be entitled to any special deference or consideration. Doc. 25 at 5 (citing 20 C.F.R. §§ 404.1502,

404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r, Soc. Sec. Admin.*, No. 12-14963, 2013 WL 2097364, at *2 (11th Cir. May 16, 2013) (holding ALJ does not have to defer to opinion of doctor who conducted single examination and who was not a treating doctor); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (same)). On the other hand, as an examining source, Dr. Shea's opinion is entitled to more weight than the opinion of a non-examining source, such as the state agency physician on whose opinion the ALJ relied.

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

For the most part, the ALJ accurately summarized Dr. Shea's January 26, 2011 notes from the independent medical evaluation (with one notable exception discussed below), including that Plaintiff had developed four disc herniations in the cervical spine since the car accident in May 2010. R. 28. The ALJ noted Plaintiff reported that after the second car accident, she had headaches nearly every day, lasting until she takes medication; neck pain radiating to shoulders, worse on right; numbness and tingling in hands and fingers; reaggravation of low back pain going down both legs, worse on left;

-11-

and numbness and tingling in both legs. R. 28. The ALJ also cited Dr. Shea's notes that Plaintiff was in no acute distress; ambulated with a cane for balance and support; physical examination showed tenderness, increased muscle tone over the trapezius muscles bilaterally, and decreased range of motion in cervical spine; mostly 5/5 strength in upper extremities; decreased pinprick sensation in third-fifth digits right hand and third digit of left hand; mild tenderness and spasm in lumbar spine with decreased range of motion; negative straight leg raises; and 4/5 strength in lower extremities. R. 28. Dr. Shea also noted Plaintiff's report that she was unable to complete even simple household chores. He opined she has 15% whole person impairment and would most likely need cervical spine surgery in the next three to five years. R. 610. The Commissioner argues that the ALJ appropriately discounted Dr. Shea's opinion that Plaintiff was unable to perform any household chores and suffered from constant and severe pain because she found it was inconsistent with his examination, which found Plaintiff was in no acute distress, she had only mild tenderness and spasm in the lumbar spine, she had negative straight leg raises, and she had 4/5 strength in lower extremities. R. 29, 606-09.

The problem with the ALJ's analysis of Dr. Shea's notes is that the ALJ seemed to focus on Dr. Shea's notes regarding Plaintiff's *lumbar* spine, when it is quite clear from Dr. Shea's notes that the more serious disc herniations, and radiating numbness in her fingers, after the *second* car accident were in Plaintiff's *cervical* spine. *See* R. 672. The ALJ is simply incorrect when she states that Dr. Shea's findings are not supported by imaging studies because Dr. Shea ordered an MRI in March 2011, taken nine months after the May 2010 car accident, which showed herniations at four levels: at C3-4, there was moderate stenosis of the right neural foremen; at C4-5 and C5-6, there was a herniation with a tear and mild stenosis of the spinal canal and disc bulging at C5-6; at C6-7, there was disc bulging abutting the spinal cord, herniation with a tear, and mild stenosis of the spinal canal. R. 672. Plaintiff complained of numbness in several fingers, and Dr. Shea noted that she had decreased pinprick sensation in third-fifth digits right hand and third digit of left hand. R. 610.

The ALJ relied on the opinion of the state agency non-examining physician (R. 616-17) who noted in cryptic medical shorthand various findings from Dr. Grant's consultative examination in February 2011.  R. 617 ("CE DTD 2/10/2011").  While Dr. Grant's examination seemed fairly thorough, she concentrated in the summary on Plaintiff's complaints of pain in the lumbar spine and did not address the cervical spine at all.  In her notes of the cervical spine examination, Dr. Grant listed tenderness to palpation of the paravertebral muscles, and reduced range of motion, with flexion limited to no more than 25 to 30 degrees in any direction.  R. 613.  Whether it was a language/communication barrier or some other reason, the fact is that Dr. Shea's examination just one month later, in March 2011, noted significant limitations in Plaintiff's cervical spine condition.  Dr. Shea opined:

> [Plaintiff] was involved in a motor vehicle accident on 5/21/10 which resulted in four cervical disc herniations, none of which were present on an MRI performed less than five months prior to this accident. As a result of her cervical spine injuries, she is unable to complete simple household chores and she has constant and severe neck pain. Her accident also produced a small but permanent aggravation to her prior low back condition. It is my opinion that she has a 15% whole person impairment rating causally related to her 5/21/10 accident. With four different levels of new disc herniations in her neck she is at considerable risk for requiring a multi-level cervical spine fusion surgical procedure. With a far greater than 50% certainty she will need cervical spine surgery within the next three to five years.

R. 610. The ALJ relied on the state agency physician's opinion; however, the state agency physician did not mention the results of Dr. Shea's March 2011 examination and did not quote it or cite to it, understandably, because his RFC opinion was completed on February 7, 2011, a month before Dr. Shea's examination in March 2011.  R. 622.  The Commissioner concedes that the state agency physician did not discuss Dr. Shea's opinion but argues that "Plaintiff points to no authority that the state agency physician had to discuss every piece of evidence before him" (Doc. at 9 n. 2); however, the state agency reviewing physician did not discuss Dr. Shea's opinion because he did not have it in front of him.

-13-

The Commissioner argues that the ALJ was correct in concluding that Dr. Shea's opinions were inconsistent with the evidence of record after Plaintiff's second car accident in May 2010. The Commissioner also points to the ALJ's notation that in September 2010, Diego Guerrero, M.D., noted Plaintiff could ambulate without assistance. R. 29, 507. However, Dr. Guerrero noted Plaintiff symptoms, and that she had not responded to conservative treatment, thus, he recommended a series of epidural injections. R. 507. Unfortunately, the first epidural caused Plaintiff to stay in bed for three days and she did not continue.

Third, Plaintiff argues that Dr. Kahn's medical records do not create the inconsistencies contended by the ALJ, but instead corroborate Plaintiff's increased pain and anxiety symptoms following the second car accident of May 19, 2010. Plaintiff argues that a review of Dr. Kahn's medical records clearly indicates he uses a boilerplate template to assist him in evaluating his patients, and that some of the boilerplate questions relied upon by the ALJ indicating a higher level of functioning do not comport with the entries made by Dr. Kahn in the assessment section of his records. That is, Dr. Kahn's assessment and diagnosis of Plaintiff's medical condition is more clearly articulated in those sections of the medical records that are not limited to stock boilerplate responses. Plaintiff further argues that Dr. Kahn is not a psychiatrist nor is he a physician who specializes in the treatment of low back pain; but he is an internist who treats the plaintiff's high blood pressure and other conditions. Plaintiff contends that the medical records from the specialists who actually treated the plaintiff's orthopedic conditions are much more detailed and should be given greater weight, but that the ALJ ignored those records and chose to "cherry pick snippets" from Dr. Kahn's records to support the residual functional capacity given to the VE. Plaintiff argues that ALJ should have given the opinions of Dr. Rojas and Dr. Shea more weight as "orthopedic specialists."

The Commissioner contends that the ALJ properly discussed Dr. Khan's notes from the visit immediately after her car accident in May 2010 and the months following, arguing that Dr. Khan

noted that her neurological and musculoskeletal examinations were "normal" at that time and five months later, in September 2010. R. 28-29, 513-14, 532, 543. However, while the May and September 2010 "musculoskeletal" description (completed by "ancillary persons" (R. 514, 660)) states the exact same thing: "denies muscle or joint pain, weakness, stiffness, swelling or inflammation, denies any restriction of motion, cramping, or atrophy," this is obviously misleading and contradictory in light of the notes in the "Chief Complaints" section of the same reports. R. 514, 660. On May 20, 2010, the day after Plaintiff's second car accident, Dr. Khan notes in the "complaint" section: "Patient [complains of] following symptoms: auto accident 5-19-201- @ 1:45 pm. [Complains of] neck pain back pain, both shoulders, left arm, left leg, head." R. 659. Such contradictory statements– repeatedly – and in the same doctor's notes[3] are internally inconsistent and the ALJ should have discounted the boilerplate language stating that Plaintiff "denies muscle or joint pain" because that was clearly mistaken. *Compare* R. 659 *with* R. 660.

Similarly, on September 30, 2010, though the boilerplate language said Plaintiff denied muscle or joint pain in the muscoskeletal section, Dr. Khan actually assessed Plaintiff with "cervicalgia, unspecified backache, pain in soft tissues of limb, lumbar sprain and strain, and late effect, motor vehicle accident" and noted that Plaintiff had complained Dr. Guerrero's epidural injection was "not helping her." R. 514. The verbatim "musculoskeletal" description (R. 516) is listed for the next appointment as well, even though Dr. Khan had referred Plaintiff for an orthopedic consultation based on his examination of her, her complaints two weeks before, and her diagnosis of "late effect" from the motor vehicle accident. R. 514, 517.

Because the ALJ incorrectly found that Dr. Shea's "findings were not supported on imaging reports" and failed to acknowledge the March 2011 MRI on which Dr. Shea based his opinion and

---

[3]The inconsistency may stem from having the ancillary person assist with talking to the patient or the language barrier.

-15-

failed to note the inherent inconsistency between the boilerplate "examination notes" versus Dr. Khan's actual assessments, the ALJ's decision as to Plaintiff's physical limitations and her physicians' opinions was not based on substantial evidence. On remand, the ALJ will reconsider the medical evidence of record in keeping with the discussion above.

### 2. *Plaintiff's mental limitations and psychiatrist opinion*

Plaintiff also argues that the ALJ failed to give the appropriate weight to the opinion of Plaintiff's Mental RFC by her treating psychiatrist, Dr. Vivian Charneco. Plaintiff points to Dr. Charneco's records showing she had a history of depression, anxiety, and panic attacks following the second motor vehicle accident in May 2010. She argues that she and her husband both indicated in the function reports and anxiety questionnaire–which she contends were corroborated by Dr. Guerrero's notes–that she experienced panic attacks from one to three times everyday, lasting up to 15 minutes. R. 289. Plaintiff argues that the ALJ erred in not including the frequency and duration of the panic attacks, which were uncontroverted, when she assessed the plaintiff's overall residual functional capacity while proffering the hypothetical question to the VE.

The ALJ found that Plaintiff had been treated for depression since August 2010 with some improvements, but with a recent exacerbation after the death of her son. R. 31-32. The ALJ found Dr. Charneco's December 2010 statement opining disability primarily to the effect of pain on memory and the ability to accomplish tasks, was not supported by "the ongoing mental status findings in the treatment records" from Dr. Khan, and "the objective medical findings" which she found were not supportive of the degree of pain and the cognitive limits Dr. Charneco noted. As discussed above, there are obvious inconsistencies in Dr. Khan's notes and the ALJ failed to note the March 2011 MRI on which Dr. Shea based his opinion of Plaintiff's four herniated discs. On remand, the ALJ will reassess her opinion of Plaintiff's mental impairments once the evidence of Plaintiff's physical impairments is properly assessed.

-16-

To the extent Plaintiff also argues that the ALJ erred in failing to explain the weight she placed on Plaintiff's GAF scores, the Commissioner appropriately points out that the ALJ is not *required* to consider a particular GAF score. The Commissioner has declined to endorse GAF scores for use in the disability programs. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000)*; Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005).

Plaintiff also argues that the ALJ failed to properly address her own subjective complaints and the limitations asserted by Plaintiff's husband in his December 2010 Third-party Report[4] (after the second car accident) and the side effects of Plaintiff's medications made her sleepy. (R. 295).

Plaintiff testified that her pain makes it difficult for her to get up and down and she cannot sit for a long period of time; she also has depression and anxiety, and she is afraid to drive because "she think[s] that cars are coming towards [her]." R. 71. During the day her mother spends time with her; she prepares breakfast and she gives her medicine because she forgets to take it. R. 72. She sits in a reclining chair, but not for long because of pain, therefore, she constantly stands up and sits down because of the pain. R. 72. Because her back hurts so much, she feels more comfortable lying down, which she does for five to six hours per day. R. 73-74. When she feels well enough to leave the house, she travels with her husband or mother once or twice per week, but has to return home quickly because of pain. R. 74. In addition to the subjective complaints asserted by Plaintiff, Plaintiff's husband asserted that she only leaves the house for basic things, appointments, to go to the supermarket and the pharmacy, and that she cannot leave the house alone because she feels panicky driving; and she needs help to walk, sit and stand most of the time. R. 293.

---

[4] Plaintiff's husband stated her conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, complete tasks, concentration, understanding, and getting along with others. R. 295.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ did summarize Plaintiff's testimony from the hearing as to her subjective complaints, as well as many of Plaintiff's husband's statements about Plaintiff (R. 25-26), but ended up discounting Plaintiff's credibility regarding her limitations because, the ALJ found, the record evidence did not support Plaintiff's subjective complaints.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

As discussed above, the ALJ failed to note the March 2011 MRI which showed cervical disc problems (on which Dr. Shea relied) and the internal inconsistencies in Dr. Khan's records. On remand, the ALJ will address Plaintiff's subjective complaints and the statements by her husband about her limitations, if appropriate, under the Social Security Regulations and the Eleventh Circuit's pain standard.

3. *Unemployment benefits*

Plaintiff argues that the ALJ should not have discounted her credibility because she received unemployment benefits, representing her fitness to work, when she was applying for disability benefits representing she was unable to work. R. 30. Plaintiff contends that the ALJ erred in not asking Plaintiff why she collected unemployment benefits and '[h]ad she inquired further she would have learned the plaintiff realized accepting unemployment benefits was a mistake and actually paid back the benefits to the state agency in Florida." Doc. 24 at 29 (R. 337-50). The Commissioner contends that the ALJ appropriately considered that Plaintiff collected unemployment benefits in 2010, thus undermining the credibility of her claim that she has been unable to engage in any substantial gainful activity since her alleged onset of disability. R. 30. The Commissioner contends that the evidence simply shows Plaintiff repaid unemployment benefits because it was determined that she was "overpaid" (R. 340-42) and does not show that Plaintiff repaid because she somehow mistakenly certified she was able and ready to work. R. 337-50.

Now that Plaintiff has chosen to state a modified alleged onset date following her *second* car accident in May 2010, and it appears that Plaintiff received unemployment compensation of $992 only through the first quarter (or March 31) of 2010, it would be appropriate on remand for the ALJ to determine if the collection of unemployment benefits impacts Plaintiff's credibility as to her

impairments *after* the modified alleged onset date. On remand, the ALJ can inquire of Plaintiff why and when she received unemployment compensation and when and why she repaid the unemployment compensation. The ALJ should then articulate her findings on the issue in a new decision.

4. *Remand to a different ALJ*

Although Plaintiff requests in the Conclusion to her Memorandum of Law to have the case reassigned to a different ALJ, she has failed to set forth a sufficient basis for such a remand to a different ALJ, which is an extraordinary remedy. Here, the ALJ mistakenly failed to note certain imaging studies supporting Dr. Shea's opinion and the internal inconsistencies in Dr. Khan's records, but otherwise performed a detailed and careful analysis.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 2, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record